Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 16, 2020

**2020 CO 21**

**No. 18SC620,** *People v. Lindsey*—Competency Motions—Statutory Threshold
Requirements—Judge's Discretion to Reject Inadequate Proffer.

The supreme court concludes that section 16-8.5-102(2)(b), C.R.S. (2019),
includes threshold requirements.  Further, the supreme court concludes that,
while trial courts must guard against second-guessing a competency motion that's
"in writing" and contains "specific facts" that form the basis of counsel's "good
faith doubt" about the defendant's competency—i.e., a motion that satisfies the
threshold requirements in section 16-8.5-102(2)(b)—they retain sufficient
discretion to reject a competency motion that rests on counsel's inadequate proffer.
Because the supreme court discerns no abuse of discretion in the district court's
rejection of defense counsel's competency motion as inadequate, it reverses the
judgment of the court of appeals.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 21

### Supreme Court Case No. 18SC620
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1368

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

William Arthur Lindsey.

### Judgment Reversed
*en banc*
March 16, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
　　*Denver, Colorado*

**Attorneys for Respondent:**
Ridley, McGreevy & Winocur, PC
Robert T. Fishman
　　*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Criminal Defense Bar:**
JLongtin Law, LLC
Jennifer E. Longtin
　　*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE HART** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE GABRIEL** join in the dissent.

¶1     Any experienced attorney would have realized that the trial court was not going to grant another motion to continue in this case. This was at least the *seventh* trial setting, the case had been pending for approximately three years (prompting another judge to remark that it was likely the oldest case pending in Jefferson County), David G. Tyler was William Arthur Lindsey's *fourth* attorney in this case, and Judge Todd Vriesman and his predecessor had admonished Tyler and Lindsey no fewer than three times during the previous twelve months that there would be no more continuances.

¶2     A month before trial, Tyler moved to withdraw from the case, but his motion was denied after a hearing in front of a different judge who found no irreconcilable conflict. On the eve of trial, Tyler filed another motion, this one challenging Lindsey's competency. The factual assertions in this motion were the same factual assertions on which Tyler relied during the hearing on the motion to withdraw ten days earlier: Lindsey had failed to be completely forthright with him, to keep promises to furnish information and funds for an effective defense, and to diligently work and communicate with him. In all the years the case had been pending, this was the first time anyone had ever raised a question about Lindsey's competency. And, during the hearing on the competency motion, just as during previous hearings, Lindsey was lucid and coherent, showing no signs of incompetency.

¶3     Tyler believed that our competency statutes required the trial court to either make a preliminary finding regarding competency or indicate that there was insufficient evidence to do so.  He was aware that if the court made a preliminary finding (either of competency or incompetency) and he objected to it or, alternatively, if the court determined there was insufficient information to make a preliminary finding, the statutory scheme required the court to order a competency evaluation, which, in turn, would necessarily postpone the trial.  But Judge Vriesman found that the motion's factual assertions had nothing to do with competency and did not support a good-faith doubt about Lindsey's competency.  Accordingly, consistent with his and his predecessor's previous warnings about no more continuances, Judge Vriesman refused to postpone the trial.  The case thus proceeded to a jury trial, where Lindsey was convicted of securities fraud and theft.  Lindsey then appealed, and a division of the court of appeals vacated his convictions.

¶4     Because we perceive no abuse of discretion by the trial court, we now reverse the division's judgment.  We conclude that, while trial courts must guard against second-guessing a competency motion that's "in writing" and contains the "specific facts" that form the basis of counsel's "good faith doubt" about the defendant's competency—i.e., a motion that satisfies the threshold requirements

4

in section 16-8.5-102(2)(b), C.R.S. (2019)—they retain sufficient discretion to reject the rare competency motion grounded in an attorney's inadequate proffer.

## I. Facts and Procedural History

¶5 Over the course of thirteen months, Lindsey persuaded six investors to advance roughly $3 million toward a new technology that he claimed would harness the energy of bioluminescent algae to light signs and panels. In soliciting these funds, Lindsey told his investors that he had already secured contracts to sell his lighting products to several large clients, including the U.S. Department of Defense, U-Haul, PetSmart, and the 2012 Super Bowl. As it turned out, neither the technology nor the contracts existed. Instead, Lindsey diverted the funds he collected to his own personal use. But Lindsey's investment scheme caught up with him on June 7, 2012, when a Colorado grand jury indicted him for securities fraud and theft.

¶6 Lindsey, however, would not stand trial for almost three years. In the intervening time, the criminal case against Lindsey lingered in the Jefferson County district court as it was besieged by significant procedural interruptions, including numerous continuances of court appearances, at least seven trial settings, and three changes in defense counsel. Lindsey's handiwork was responsible for the bulk of these delays. The last attorney to enter an appearance on Lindsey's behalf was Tyler. But, like most of his colleagues before him, Tyler

eventually wanted off the case. Less than a month before trial, he filed a combined notice of discharge and motion to withdraw ("motion to withdraw"). Tyler informed the court that he and Lindsey had "[i]rreconcilable differences" and that Lindsey had discharged him as counsel of record. In a letter to the court, Lindsey denied discharging Tyler and objected to Tyler's withdrawal from the case.

¶7 Tyler's motion to withdraw was referred to another judge, Judge Christopher Munch, for a hearing outside the presence of the prosecutor.[1] At the hearing, Tyler argued that Lindsey had failed to be completely forthright with him, to keep promises to furnish information and funds for an effective defense, and to diligently work and communicate with him.[2] Judge Munch found no irreconcilable conflict and predicted, based on the number of postponements and the age of the case, that Judge Vriesman was unlikely to continue the trial yet again. On Judge Munch's recommendation, Judge Vriesman denied Tyler's motion to withdraw.

---

[1] The transcript of the hearing in front of Judge Munch was initially sealed. However, Lindsey's appellate counsel attached it to his opening brief at the court of appeals and it is now accessible to the public.

[2] This wasn't a one-way street. Lindsey complained about Tyler too, accusing him of failing to return phone calls, to work on the case diligently, to contact witnesses, to review documents, to make productive use of the $39,000 paid in attorney fees, and to submit accurate billing statements.

¶8     Ten days later—less than forty-eight business hours before trial was set to start—Tyler filed a new motion, this one asking the court to make a determination as to Lindsey's competency pursuant to section 16-8.5-102.[3]  In the motion, Tyler certified that he had "good faith doubts" that Lindsey was competent to proceed. Tyler opined that Lindsey could neither "appreciate the nature and consequences of the trial which he [was] facing" nor "assist in the preparation and assistance of [c]ounsel in his [d]efense."  But the specific facts on which Tyler relied mirrored the factual allegations advanced in support of his motion to withdraw: Lindsey had not been completely forthright with him, had not kept promises to furnish information and funds for an effective defense, and had failed to diligently work and communicate with him.

¶9     At the hearing on the competency motion, which was held on the morning of the first day of trial, Lindsey informed the court that he had read Tyler's competency motion and that it was "driving [him] nuts" because he had given Tyler "a lot" of the information and documents that the motion claimed he hadn't provided.  He added that he wished he had a lawyer who would "at least look[]

---

[3] While sections 16-8.5-101 through -103, C.R.S. (2019) were amended in 2019, long after Lindsey's trial, the changes are not relevant to the analysis here.  Therefore, throughout this opinion, we cite, quote, and discuss the current statutory provisions.

at [his] technology and . . . at all the documents that [he had] provided" Tyler. Lindsey further indicated that he had never been diagnosed with a reading disability or any other type of mental or developmental disability. After being advised of the consequences that would accompany a court-ordered competency evaluation, including that he would be committed to the Jefferson County jail or the Colorado Mental Health Institute at Pueblo for as little as several weeks or as long as a few months, Lindsey told the court that he did not wish to join Tyler's motion. In fact, according to Lindsey, he "didn't even know the motion was being filed" by Tyler.

¶10 For her part, the prosecutor asked the court to allow Lindsey's probation officer in a criminal case out of Arapahoe County to testify by telephone. She represented, by way of an offer of proof, that Lindsey's probation officer, who knew Lindsey better than Tyler, the judge, and the prosecutor, would testify that she (the probation officer) had been meeting regularly with Lindsey for two years and that Lindsey was competent.

¶11 At that point, Tyler requested and received a short recess so that he could discuss the competency motion with Lindsey. At the end of the recess, Tyler informed the court that Lindsey had experienced a change of heart and was now willing to join in the competency motion. Lindsey confirmed that, based on his discussion with Tyler, he was on board with the competency motion.

8

¶12    In resolving the competency motion, Judge Vriesman looked to the definition of "[i]ncompetent to proceed" in section 16-8.5-101(12), C.R.S. (2019). Under that definition, a defendant is incompetent to proceed if he suffers from "a mental disability or developmental disability" that causes him to lack either "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense" or "a rational and factual understanding" of the proceedings.[4]  Guided by this definition, Judge Vriesman considered all of the pertinent circumstances:

- the timing of the competency motion—"less than 48 [business] hours prior to" trial;

- the history of the case, including at least seven trial settings;

- the fact that he and his predecessor had warned Tyler and Lindsey on at least three occasions during the previous twelve months that there would be "[n]o more continuances in this case";

- Tyler's recent motion to withdraw from the case;

- the fact that "the . . . allegations that [were] contained in th[e] motion to determine competency were . . . the same type of allegations with regard to lack of communication[] [that] were contained in th[e] previous motion" to withdraw;

---

[4] At the time of trial, the definition of "incompetent to proceed" was codified at section 16-8.5-101(11).  Following the 2019 amendments, it is now located at section 16-8.5-101(12).  The statutory language remains the same.  *See* Ch. 227, sec. 1, § 16-8.5-101, 2019 Colo. Sess. Laws 2273, 2274.

- the multiple changes of counsel, which had caused delays in the case, and the fact that Tyler was Lindsey's fourth attorney, though not the first to assert a conflict with Lindsey;

- his observations of Lindsey that day and during several prior court appearances, which provided no basis to be concerned about Lindsey's competency;

- the fact that Lindsey, who had a history of other cases (both civil and criminal), was "familiar with court proceedings" and not "a novice to the court system";

- the letter Lindsey wrote to the court objecting to Tyler's withdrawal from the case, which showed that Lindsey "underst[ood] the nature of the[] proceedings";

- Lindsey's admission that he had never "been diagnosed with a mental disability or [a] developmental disability";

- the fact that no evidence was presented showing either that Lindsey was taking any medication for a mental or developmental disability or that he had a history of such a disability; and

- the factual assertions in the competency motion, which reflected that Tyler's doubt about Lindsey's competency was based on the "consultation between" Tyler and Lindsey never occurring, "documents that exist[ed]" not being "fully vetted," Lindsey's alleged "fail[ure] to provide" documents to Tyler, the fact that Lindsey "forgot or ignored meetings," and the failure to retain experts.

¶13 The court ultimately rejected Tyler's competency motion. It determined that Lindsey, "an intelligent man," did not suffer from a mental or developmental disability, was "able to act and speak rationally," and had "a reasonable degree of rational understanding in order to assist in the defense in this case." The court

10

found that the conclusory opinions in Tyler's motion related to Lindsey's purported incompetency did not "raise a good-faith doubt about competency."

¶14 Judge Vriesman acknowledged the concerns expressed by Tyler. But he explained that "almost every trial attorney . . . might like more preparation[] and sometimes even a more cooperative client." Indeed, mentioned the judge, this was certainly not the first time a defense attorney in a criminal case wished his client had done more to help prepare a defense.

¶15 In the end, Judge Vriesman was convinced that the issues raised by Tyler were related to Lindsey's lack of cooperation in this litigation and had nothing to do with competency:

> Defense counsel cannot make a claim of alleging competency of his client based upon a client's refusal to cooperate with his counsel. That doesn't go to the issue of present ability to understand [or to the issue of] a reasonable degree of rational understanding in the proceedings that are before us . . . . I will repeat that defense counsel cannot make a claim of competency in this case, which is an ability to understand.

Judge Vriesman clarified, though, that he was not denying the motion based on a finding of competency, which, if timely objected to by either attorney, would require a competency evaluation. Instead, he was rejecting or striking the motion for failing to raise a good-faith doubt regarding competency.

¶16 The case then proceeded to trial. Midway through the trial, Tyler renewed his competency motion, insisting that Lindsey was entitled to have the proceedings stayed "pending the outcome of an evaluation." The trial court

11

denied the renewed motion, and at the conclusion of the trial, the jury found Lindsey guilty as charged.

¶17    On appeal, Lindsey argued that the trial court erred by refusing to follow the statutory procedures for determining competency set forth in sections 16-8.5-102 and -103, C.R.S. (2019).  More specifically, Lindsey maintained that, upon receiving Tyler's competency motion, the trial court had only two choices: (1) make a preliminary finding of competency or incompetency, which, if timely objected to by either attorney, would require a competency evaluation; or (2) indicate that there was insufficient information to make a preliminary finding, which would require a competency evaluation.  The People countered that Lindsey's judgment of conviction should be affirmed because a competency evaluation is not required unless the trial court has "reason to believe" that the defendant is incompetent.

¶18    Ultimately, a division of the court of appeals sided with Lindsey, holding that the trial court had abused its discretion in failing to follow the procedures set forth in sections 16-8.5-102 and -103.  *See People v. Lindsey*, 2018 COA 96M, ¶ 15, __ P.3d __.  In particular, the division ruled that the trial court had erred by (1) concluding that Tyler's motion failed to adequately raise the issue of Lindsey's competency; and (2) refusing to order a competency evaluation after Tyler attempted to object to what the division viewed as the trial court's preliminary

finding of competency. *Id.* In the process, the division rejected the People's assertion that a competency evaluation is required only when the trial court has "reason to believe" the defendant is incompetent. *Id.* at ¶ 6. Rather, looking to the plain language of sections 16-8.5-102(2)(a)–(b), the division found that a defendant's competency can be raised when the judge, the prosecutor, or defense counsel has "reason to believe" the defendant is incompetent. *Id.* Because it determined that Tyler had filed a valid motion, the division vacated Lindsey's convictions and remanded the case for a determination of whether a retrospective evaluation of Lindsey's competency is feasible. *Id.* at ¶¶ 20–24.

¶19 The People then petitioned this court for certiorari review. And we granted their petition.[5]

## II. Analysis

¶20 In Colorado, a defendant is "[i]ncompetent to proceed" if, "as a result of a mental disability or developmental disability," he lacks either "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational

---

[5] Specifically, we granted certiorari to review the following issue:

> Whether the court of appeals erred in concluding that a trial court is required to order a competency evaluation whenever a defendant files a motion in writing requesting such an evaluation and the motion contains a certificate of counsel stating that it is based on a good faith doubt that the defendant is competent to proceed.

13

understanding in order to assist in the defense" or "a rational and factual understanding of the criminal proceedings." § 16-8.5-101(12).[6] Thus, a defendant may only be declared incompetent if: (1) he has "a mental disability or developmental disability," and (2) as a result of such disability, he either is unable to consult with his attorney in order to assist in the defense or lacks a rational and factual understanding of the proceedings. *Id.*

¶21    At the outset, we join the division in rejecting the People's contention that a competency evaluation is only required if the trial court "has reason to believe" the defendant is incompetent. Section 16-8.5-102(2)(b) provides that if defense counsel or the prosecutor has reason to believe the defendant is incompetent, either may make a motion to determine competency. If either party properly raises the question of a defendant's competency, the court has two choices: (a) make a preliminary finding of competency or incompetency; or (b) determine that it lacks sufficient information to make a preliminary finding. § 16-8.5-103(1)(a), (2). If the court makes a preliminary finding (whether of competency or incompetency) and

---

[6] Section 16-8.5-101(5) contains a similar definition of "[c]ompetent to proceed" —a defendant is competent to proceed if he "does not have a mental disability or developmental disability" that prevents him either "from having sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense" or "from having a rational and factual understanding of the criminal proceedings."

14

a party timely objects to it, the court must order a competency evaluation.[7] § 16-8.5-103(2). Similarly, the court must order a competency evaluation if it determines that it lacks sufficient information to make a preliminary finding. *Id.*

¶22 But the division erred in failing to recognize that there is more to our competency statutory scheme. The statutory mandate that instructs trial courts to make a preliminary finding or determine that there is insufficient information to make such a finding is not triggered unless the attorney raising the competency issue satisfies certain threshold requirements in section 16-8.5-102(2)(b). Specifically, counsel must make his motion "in writing," certify he has "a good faith doubt that the defendant is competent to proceed," and "set forth the specific facts that have formed the basis for the motion." § 16-8.5-102(2)(b). We conclude that an attorney cannot adequately raise the question of competency without complying with these threshold requirements.

¶23 Here, the trial court found that Tyler's motion failed to comply with the threshold requirements in section 16-8.5-102(2)(b) because it was barren of specific facts supporting a good-faith doubt regarding Lindsey's competency. Inasmuch as the record amply supports this finding, we perceive no abuse of discretion. A

---

[7] If neither party timely objects to the preliminary finding, the preliminary finding becomes a final determination of competency or incompetency. § 16-8.5-103(1)(a).

trial court abuses its discretion only when its decision is "manifestly arbitrary, unreasonable, or unfair." *People in Interest of W.P.*, 2013 CO 11, ¶ 10, 295 P.3d 514, 519. In our view, there is nothing manifestly arbitrary, unreasonable, or unfair about the trial court's rejection of Tyler's competency motion. The division thus erred in reversing Lindsey's judgment of conviction.

¶24 Here are the specific facts set forth by Tyler to support his doubt about Lindsey's competency:

- Lindsey has consistently avoided contact with counsel and has made it virtually impossible for counsel to assist him with his defense.

- Lindsey has consistently been requested to furnish information to counsel. He has made assurances to counsel that he has the information, but has failed to deliver the information.

- Lindsey has consistently asserted (including recently in open court) that he furnished two terabytes of information to counsel. Based on counsel's understanding of Lindsey's internet Dropbox, counsel has received no such amount of information. The information that has been received by counsel is not generally relevant to the issues in this action. Lindsey has been advised of this fact. The most recent addition to the Dropbox did not contain any information that counsel deems supportive of the defense.

- Counsel has been advised that a large amount of new information concerning this matter is available. Counsel was advised the information would be scanned and sent to him. No information has been received. This pattern of indicating the possession of information and then failing to deliver it is consistent with Lindsey's method of operation, which counsel reviewed with former counsel.

- Lindsey has consistently advised counsel and previous counsel that he has a number of experts available to support his claims. Throughout his

representation, counsel has requested the names and addresses of these witnesses. They have never been furnished. Lindsey has been pressed on this issue. As of this moment, no expert has been identified and no address, phone number, or any other identifying information has been furnished. And no funding has been made available to retain these experts.

- Lindsey has indicated on a number of occasions that he was unable to meet with counsel because he was meeting with his probation officer "all day." He has also represented that he has contacted his probation officer concerning being able to meet with counsel beyond curfew hours. But Lindsey's probation officer has stated that she has never denied him permission to meet with counsel. In fact, she has indicated that she has never been requested to allow Lindsey to travel to meet counsel. According to the probation officer, if the request had been made, she never would have stood in the way of Lindsey meeting with counsel.

- Lindsey has made accusations about current counsel that are untenable and not in accord with the accuracy of the matters asserted.

- Counsel has not heard from Lindsey for three days and has not received anything from him concerning the requested information. However, yesterday, Lindsey directed another attorney to contact counsel about the prospect of taking over this case. This behavior is in keeping with Lindsey's actions immediately before the last hearing on the motion to withdraw.

¶25     The trial court reasonably concluded that these facts had no bearing on Lindsey's competency. These facts, taken at face value, simply established that Lindsey had failed to be completely forthright with Tyler, to keep promises to furnish information and funds for an effective defense, and to diligently work and communicate with Tyler.

17

¶26 Significantly, the specific facts in the competency motion were the same specific facts advanced by Tyler to show that he had a conflict with Lindsey that warranted withdrawal as counsel of record. Tyler did not mention, much less discuss, any issues related to Lindsey's competency in the motion to withdraw or during the hearing held on that motion. Nor did Tyler aver in the competency motion or during the hearing held on that motion that he had noticed a change in Lindsey vis-à-vis competency after the hearing on the motion to withdraw. Yet Tyler never explained why he waited until the eleventh hour to file the competency motion.

¶27 Moreover, no one in this case, including prior defense counsel, had ever raised any concerns related to Lindsey's competency. There is also no indication in the record that anyone had ever questioned Lindsey's competency in any of his other cases.

¶28 Tellingly, the transcript of the hearing in front of Judge Munch and the transcript of the competency hearing both reflect that Lindsey had no difficulty understanding the proceedings, disputing Tyler's assertions, or communicating his concerns about Tyler's services. Lindsey was articulate in both hearings and effectively conveyed his misgivings regarding Tyler's representation. Consistent with those transcripts, the prosecutor represented that Lindsey's probation officer, who knew Lindsey well, was prepared to vouch for his competency. And the

other circumstances on which the trial court relied offer further support for its rejection of Tyler's competency motion as inadequate under section 16-8.5-102(2)(b).

¶29 True, Tyler's motion expressly questioned Lindsey's competency. But it did so only through Tyler's conclusory and speculative opinions, and section 16-8.5-102(2)(b) requires that a motion "set forth the specific facts" that form the basis for counsel's good-faith doubt regarding his client's competency. Here are the assumptions and suppositional beliefs Tyler included in his competency motion:

- *Counsel has formed the belief* that, for reasons unknown to counsel, Lindsey is unable to appreciate the nature and consequences of the trial and to assist counsel in the preparation of the defense. Counsel believes that he is under an ethical obligation to bring this matter to the Court's attention. *Counsel further believes* that Lindsey's actions are irrational and have left counsel without the ability to effectively prepare and present a competent defense.

- Lindsey *apparently* fails to perceive the nature of his alleged offenses and the relationship of his conduct to the charges.

- *Counsel believes* that Lindsey earnestly believes that he has information related to expert witnesses and that these witnesses will back him up. However, *counsel believes* that this conclusion flies in the face of reality. The ease with which Lindsey has repeatedly made unfounded statements and assurances leads *counsel to believe* that, as a result of a significant psychological pathology, there can be no trust in the attorney-client relationship. Given the major issues in the attorney-client relationship, *counsel cannot help but believe* that Lindsey is operating under significant delusions about reality and the status of this case.

¶30     More importantly, Tyler's thoughts about Lindsey's competency were premised on the inferences Tyler unreasonably drew from the specific facts identified earlier, which were irrelevant to Lindsey's competency. Based on those specific facts—Lindsey's failure to be completely forthright, to keep promises, and to diligently assist with and communicate about the case—Tyler argued that he had concerns about Lindsey's competency. In effect, Tyler posited that Lindsey's failure to be completely forthright with him, to keep promises, and to diligently work and communicate with him allowed Tyler to "form[] the belief" that Lindsey's actions and thoughts were "irrational" and "significant[ly] delusion[al]," and "fl[ew] in the face of reality," and that Lindsey was "apparently" unable "to perceive the nature of his alleged offenses and the relationship of his conduct to the charges," as well as "unable to appreciate the nature and consequences of the trial" and "to assist [counsel] in the preparation" of his defense.

¶31     Were we to accept Tyler's hypothesis, it would render the threshold requirements in section 16-8.5-102(2)(b) largely, if not wholly, meaningless. Any attorney with a client who behaves like Lindsey allegedly did with Tyler could force a continuance by questioning his client's competency through a written motion. It hardly bears stating that this approach would risk adverse consequences to the efficiency of our criminal justice system, as it would

20

jeopardize our trial courts' ability to manage their dockets and control the proceedings over which they preside.

¶32 We do not believe that this is the type of illogical or absurd result the legislature envisioned when it adopted the current version of section 16-8.5-102(2)(b). *See McCoy v. People*, 2019 CO 44, ¶ 38, 442 P.3d 379, 389 (explaining that "we must avoid [statutory] constructions that would . . . lead to illogical or absurd results"). Instead, we conclude that the legislature meant just what it said: A competency motion must be in writing, must contain counsel's certificate that it is being filed in good faith, and must set forth the specific facts that support counsel's good-faith doubt related to the defendant's competency. In construing a statute, our goal is to ascertain and give effect to the General Assembly's intent. *Id.* at ¶ 37, 442 P.3d at 389. To do so, we prioritize the language of the statute, giving its words and phrases their plain and ordinary meaning. *Id.* And we read those words and phrases in context and in accordance with the rules of grammar and common usage. *Id.*

¶33 Notably, as relevant here, section 16-8.5-102(2)(b)'s predecessor simply required "the prosecution or defense" to file a competency motion "in advance of the commencement of the particular proceeding." § 16-8-110(2)(b), C.R.S. (2007). Had the legislature intended for the mere filing of a competency motion —regardless of its contents—to require the trial court to make a preliminary

21

finding or indicate there is insufficient evidence to make a preliminary finding, it presumably would have said so. The fact that it amended section 16-8-110(2)(b) as reflected in section 16-8.5-102(2)(b) shows its intent to impose the threshold requirements on which the trial court relied.[8] Prosecutors and defense counsel alike must comply with those requirements. In the rare case one of them doesn't, the trial court retains sufficient discretion to reject a competency motion as inadequate under subsection (2)(b).

¶34 We caution trial courts, though, to resist the temptation to second-guess competency motions that are in writing and contain specific facts that support a good-faith doubt about a defendant's competency. Nothing in this opinion should be understood as imposing a demanding standard or as requiring competency motions to set forth meticulous details. In some cases, it will be challenging for defense counsel to include extensive information in a competency motion because the contents of the motion may subsequently be revealed to the prosecution. *See* § 16-8.5-102(2)(b). Trial courts should be mindful that, in general, defense counsel

---

[8] We may consider statutory history even where, as here, we find a statute unambiguous. *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 30 n.2, 433 P.3d 22, 29 n.2.

are in the best position to assess whether there is a competency concern with a defendant.

¶35 We reiterate that today we simply conclude that section 16-8.5-102(2)(b) includes threshold requirements and that trial courts retain sufficient discretion to reject the rare competency motion that rests on counsel's inadequate proffer. Under the totality of the circumstances present in this case, including the competency motion filed by Tyler, which was bereft of specific facts supporting a good-faith doubt regarding Lindsey's competency, the trial court did not abuse its discretion in rejecting the motion as inadequate. Given that trial courts are best suited to make that type of determination, and given further that there is abundant support in the record for the trial court's determination here, we abstain from disturbing the trial court's ruling.

¶36 Finally, we would be remiss if we failed to mention that today's opinion aligns with the notion that a trial court should only order competency evaluations when they are warranted. Doing otherwise has the potential to adversely affect defendants (including those in custody) who are deserving of a competency evaluation and are patiently awaiting their turn. In the recent past, all three branches of our state government have devoted substantial time and energy to addressing the lengthy backlogs that exist regarding competency evaluations. Ordering a competency evaluation when there is not a good-faith doubt about a

23

defendant's competency would undermine those efforts and further exacerbate the situation.

### III. Conclusion

¶37 For all the foregoing reasons, we conclude that the trial court did not abuse its discretion in rejecting Tyler's competency motion. We therefore reverse the division's judgment. Accordingly, the matter is remanded to the court of appeals with instructions to reinstate Lindsey's judgment of conviction.

**JUSTICE HART** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE GABRIEL** join in the dissent.

JUSTICE HART, dissenting.

¶38    Like the majority, I am uncomfortable with the timing of Mr. Tyler's request for a competency determination, particularly in light of the protracted history of his case. Unlike the majority, however, I do not believe that I can read into the statute a judicial release valve that the legislature did not itself include. I therefore respectfully dissent.

¶39    Prior to 2008, the competency statutes granted the court sole discretion as to whether to require a competency evaluation.[1] The statute as it is currently written does not give the court that same discretion. Instead, when one of the lawyers has "reason to believe" a defendant is incompetent to proceed, is willing to certify that the belief is in "good faith," and offers the "specific facts" that give rise to the belief, the lawyer sufficiently raises the issue of the defendant's competency such that the statutory process for determining competency is triggered. § 16-8.5-102(2)(b), C.R.S. (2019). After the matter of the defendant's competency is raised "by either party or on the court's own motion," the court is required to make

_____

[1] We have previously recognized that the 2008 amendments "significantly altered the procedures surrounding determination of an adult defendant's competency to proceed." *People in Interest of W.P.*, 2013 CO 11, ¶ 16, 295 P.3d 514, 520. In particular, the new statute removed the considerable discretion that had previously rested with the court as to whether a defendant would receive a competency evaluation. *Id.*

1

a preliminary determination as to competency. § 16-8.5-103(1), C.R.S. (2019). And if either party objects to that preliminary finding, then "the court shall order that the defendant be evaluated for competency" by the Colorado Department of Human Services. § 16-8.5-103(2). There is no suggestion in this statutory language that the judge should — or can — make an initial finding as to whether an attorney's motion to determine competency is in fact offered in good faith.

¶40 Tyler's motion met the statutory requirements for raising the issue of Lindsey's competency. The motion was in writing, and it contained language certifying that his motion was based on "good faith doubts" that Lindsey was competent to proceed to trial. Further, Tyler's motion alleged the specific facts that gave him "reason to believe" that Lindsey might be incompetent. These facts included, among others, that Lindsey asserted that he had provided information to Tyler that he had in fact not produced, and that this had occurred not only throughout the representation but also during the three days immediately preceding the motion to determine competency; that Lindsey seemed to believe that there were witnesses and experts who could back up his defense, but that this belief "fl[ew] in the face of reality"; and that Lindsey claimed to have had conversations with his probation officer that the officer flatly denied had ever occurred.

¶41 Based on these facts, Tyler averred his good-faith belief that Lindsey was "unable . . . to appreciate the nature and consequences of [his] trial," and was "further unable . . . to assist in the preparation and assistance of [c]ounsel in his [d]efense." Tyler's motion stated also that Lindsey "apparently fail[ed] to perceive the nature of his alleged offenses and the relationship of his conduct to the charges." And the motion expressed concern that Lindsey suffered from a "significant psychological pathology," and was "operating under significant delusions about the reality and status of this matter."

¶42 The majority recognizes, maj. op. ¶ 21, there is no statutory requirement that the attorney suspecting the defendant's incompetence must first give the judge "reason to believe" there may be a competency issue before the competency determination procedures contained in section 16-8.5-103 are triggered. Having recognized the absence of this requirement, however, the majority concludes that the statute nonetheless permits the trial court to conclude that the facts offered by the defense attorney do not support a "good-faith" belief that a defendant may be incompetent to proceed.

¶43 But the language of the statute, for better or worse, does not make a finding of "good faith" part of the threshold showing. It simply requires the attorney to certify "that the motion is based on a good faith doubt that the defendant is competent to proceed." § 16-8.5-102(2)(b). As the People actually conceded during

3

the competency hearing, by making a good-faith certification and setting out the facts that supported his belief that Mr. Lindsey was not competent to proceed, "Mr. Tyler has given his offer of proof, which is tantamount to sworn testimony since he's an officer of the court."  As a result of that offer of proof, the People continued, Tyler had "raised a doubt about defendant's competency" that required the court to hold a competency hearing.

¶44     Confronted with the plain language of this statutory scheme, I do not believe it is appropriate to add a requirement—the judge's determination that the motion to determine competency was made in good faith—that the legislature did not actually write into the law.  As this court has consistently held, "[w]e do not add words to the statute or subtract words from it."  *People v. Diaz*, 2015 CO 28, ¶ 12, 347 P.3d 621, 624.  Indeed, we must enforce statutes as written—we are not empowered "to give a statute a meaning that the plain language does not support in order to avoid a result that we find inequitable or unwise.  Where a statute leads to undesirable results, it is up to the General Assembly, not the courts, to determine the remedy."  *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1191 (Colo. 2010).

¶45     True, a threshold showing must still be made under section 16-8.5-102 in order to trigger the judge's preliminary competency determination.  Specifically, counsel must set forth "specific facts" forming the basis of counsel's "reason to

believe" the defendant might be incompetent. And those facts must bear some relationship to the statutory definition of incompetence: the existence of a mental or developmental disability, an insufficient present ability to consult with counsel "with a reasonable degree of rational understanding in order to assist in the defense," or an insufficient "rational and factual understanding of the criminal proceedings." § 16-8.5-101(12), C.R.S. (2019). At the point where such "specific facts" are alleged in the competency motion, however, the trial court is not free to deny the motion simply because the judge does not share in counsel's "belief."

¶46 I, like the majority, am sympathetic to the trial court's frustration with this last-minute competency motion and the similarity of the complaints Tyler made in this motion to those he included in his earlier motion to withdraw. But the form and content of Tyler's allegations constituted a facially valid motion under section 16-8.5-102(2)(b) that the trial court was not at liberty to deny out of hand. Because Tyler's motion raised the issue of Lindsey's competence in a manner that fully complied with the requirements of section 16-8.5-102(2)(b), the trial court was required to engage with the competency determination procedures set forth in section 16-8.5-103.

¶47 I respectfully dissent.

I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE GABRIEL join in this dissent.

5