1 

2026 CO 4
 The People of the State of Colorado, In Re Plaintiff: v. Austin Rhys McGee, Defendant: 
No. 25SA224
Supreme Court of Colorado, En Banc
January 12, 2026
 Larimer County District Court Case No. 21CR991 Honorable Susan Jasmine Blanco, Judge. 
 
2

 Attorneys for Plaintiff: Gordon P. McLaughlin, District Attorney, Eighth Judicial District Russell Connelly, Deputy District Attorney Fort Collins, Colorado 
 Attorneys for Defendant: Sidley-MacKie LLC Andrew Sidley-MacKie Fort Collins, Colorado 
 Attorneys for Amicus Curiae ACLU of Colorado: Timothy R. Macdonald Emma Mclean-Riggs Denver, Colorado 
 
3

 JUSTICE SAMOUR delivered the Opinion of the Court, in which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE GABRIEL, and JUSTICE BERKENKOTTER joined. 
 ORDER MADE ABSOLUTE 
 SAMOUR, JUSTICE 
 
4

 ¶1 This original proceeding stems from the district court's denial of the defense's request for a second-opinion competency evaluation. The court explained that it had obliged the request for an initial evaluation "merely for the benefit of the Defense," not because it had any real concerns about Austin Rhys McGee's competency. But once it had ordered the initial evaluation and that evaluation had been completed, the court could not deny the defense's request for a second-opinion evaluation by finding, retroactively, that the initial evaluation was sought as a dilatory tactic and shouldn't have been ordered in the first place. By that time, the proverbial train related to the propriety of the initial evaluation had left the station. Colorado statutory law provides that a trial court must order a second-opinion competency evaluation when, as here, it is timely requested. Thus, the court erred in denying McGee's motion for such an evaluation. Accordingly, we make absolute the order to show cause, and we remand the case for further proceedings consistent with this opinion.[1] 
 
5

 I. Facts and Procedural History 
 ¶2 The prosecution has charged McGee with numerous felony sexual offenses involving a child. During the span of three years (between April 2022 and April 2025), multiple attorneys representing McGee have requested, and the district court has ordered, several competency evaluations. The first of those evaluations was completed by Dr. Alex Rodrigues at the Colorado Mental Health Hospital in Pueblo ("CMHHIP"); he concluded that McGee was competent. Thereafter, defense counsel timely asked for a second-opinion evaluation, and that request was granted. Dr. Nicole Mack, a private forensic psychologist, performed the second-opinion evaluation and concurred with Dr. Rodrigues that McGee was competent. Neither party objected to the conclusions of Drs. Rodrigues and Mack, so the court made a final determination that McGee was competent. 
 ¶3 Approximately a year later, the issue of competency was raised again when new defense counsel asked for an evaluation. The court granted the request and ordered a second evaluation at CMHHIP.[2] Pursuant to the court's order, Dr. 
 
6

 Steven Gale conducted a competency evaluation and opined that McGee was competent. Without objection from the prosecution or the defense, the court once more made a final determination that McGee was competent. 
 ¶4 Because McGee then entered a plea of not guilty by reason of insanity, the court ordered a sanity evaluation at CMHHIP. Although that order did not include a request for a competency evaluation, the examiner, Dr. Ann Joseph, included a brief section in her report opining that McGee was competent. 
 ¶5 In May of 2025, current defense counsel re-raised the issue of McGee's competency in a detailed written motion seeking yet another competency evaluation. That motion incorporated a psychological evaluation prepared by a defense-retained expert, Dr. Lila Kimel. Although Dr. Kimel didn't form an opinion related to competency, she diagnosed McGee with multiple conditions: autism spectrum disorder, attention-deficit/hyperactivity disorder, generalized anxiety disorder, unspecified bipolar and related disorder, and post-traumatic stress disorder. 
 ¶6 The court granted the latest request. This time, Dr. Sarah Velsor performed the evaluation at CMHHIP in June 2025. She concluded that McGee was competent. Defense counsel then moved for a second-opinion evaluation and a hearing. 
 
7

 ¶7 On June 30, 2025, the court issued an order denying the request for a secondopinion evaluation ("June 30 order"). The court explained that it was not an abuse of discretion to forego a second-opinion evaluation because the defense's motion raised neither "new indic[i]a of incompetency nor a different medical or psychological explanation regarding the defendant." Continuing, the court noted that McGee had already been found competent during four competency evaluations-including the second-opinion evaluation that followed the very first evaluation-and was not entitled to "a fifth competency evaluation." The June 30 order did not address the request for a hearing. 
 ¶8 The defense immediately moved for clarification, asking the court to rule on the request for a hearing. The court then issued a more detailed order on July 1, 2025 ("July 1 order"). Although the court granted the request for a hearing, it stood by its denial of the request for a second-opinion evaluation: 
 

 [T]his Court has had roughly four years with Mr. McGee before
 it and multiple attorneys representing the same concerns
 Defense Counsel has raised .... Despite the Court having no
 concern regarding the Defendant's competency, the Court
 obliged an evaluation merely for the benefit of the Defense
 but made a record that the Court does not share any concerns.
 This is due to the Court's long history with the
 Defendant, the number of evaluations all finding Mr. McGee
 competent to proceed, and no change in Mr. McGee's
 presentation before the Court. In fact, the Court has had a
 series of longer hearings with Mr. McGee present in Court and
 appearing virtually with no concern in any changes of his
 behaviors before the Court. The truth is, Mr. McGee has been
 clear that he does not want to have the case litigated and
 has created a multitude of reasons to delay the case from
 proceeding over the course of the last four years. Within
 reason, the
 

 
8

 

 Court has allowed more than what would have been necessary to
 protect Mr. McGee's rights ....
 

 ¶9 McGee timely filed a C.A.R. 21 petition in our court, and we agreed to exercise our original jurisdiction. We explain next why exercising our original jurisdiction is appropriate in this case. 
 II. Original Jurisdiction 
 ¶10 The exercise of our original jurisdiction under C.A.R. 21 is entirely within our discretion. In re People in Int. of S.G.H., 2025 CO 59, ¶ 19, 578 P.3d 505, 509. C.A.R. 21 provides an extraordinary remedy that's narrow in scope; it is limited both in purpose and availability. Id. We are justified in exercising our original jurisdiction "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises 'issues of significant public importance that we have not yet considered.'" People v. Rowell, 2019 CO 104, ¶ 9, 453 P.3d 1156, 1159 (citations omitted) (quoting Wesp v. Everson, 33 P.3d 191, 194 (Colo. 2001)). 
 ¶11 McGee asserts that his petition raises a novel legal issue of significant public importance worthy of our immediate attention and that he lacks an adequate appellate remedy because any harm resulting from an erroneous competency finding would be irreparable. We agree. 
 ¶12 First, although we have addressed when a trial court may deny a request for a competency evaluation, see People v. Lindsey, 2020 CO 21, ¶ 22, 459 P.3d 530, 535, 
 
9

 we have not spoken on whether, after such a request is granted and a competency evaluation is conducted, a court may deny a timely request for a second-opinion evaluation. Considering the importance of competency in criminal proceedings and considering further that we have never undertaken an analysis of the statutory provisions related to second-opinion evaluations, this is an issue of first impression that is deserving of our prompt consideration. 
 ¶13 Second, McGee has no adequate appellate remedy. Forcing him to wait to raise the issue on direct appeal would not be appropriate "because the harm resulting from an erroneous finding of competency necessarily occurs at the time of such finding, regardless of any ruling on appeal." In re People in Int. of J.D., 2025 CO 14, ¶ 8, 567 P.3d 138, 141. If McGee proceeded to trial without the secondopinion evaluation he requested this past June, we would run the risk that he'd be convicted and sentenced to prison while incompetent. Notably, some of the charges he faces carry a mandatory prison sentence. 
 ¶14 Accordingly, we agree with McGee that this is a proper case for the exercise of our original jurisdiction. We therefore proceed to analyze the legal issue presented. 
 
10

 III. Analysis 
 A. Standard of Review 
 ¶15 To answer the question raised by McGee, we must interpret some of the statutory provisions addressing competency proceedings. Questions of statutory interpretation are questions of law, which we review de novo. People v. Hollis, 2025 CO 54, ¶ 19, 576 P.3d 147, 151. 
 B. The District Court Erred in Declining to Grant McGee's June 2025 Request for a Second-Opinion Evaluation 
 ¶16 We're no strangers to Colorado's competency statutory framework. Just a handful of years ago, we provided a brief recap of the mechanism set forth in section 16-8.5-102, C.R.S. (2025), and section 16-8.5-103, C.R.S. (2025), for a party to raise concerns related to a defendant's competency in a criminal case.[3]Lindsey, ¶ 21, 459 P.3d at 535. We explained in Lindsey that if the defense or the prosecution has reason to believe the defendant is incompetent, either may ask the 
 
11

 court to determine the issue of competency.[4] Id. (relying on § 16-8.5-102(2)(b)). In the event either party properly raises the issue of the defendant's competency, the court may: (1) make a preliminary finding of competency or incompetency; or (2) determine that it has insufficient information to make such a preliminary finding. Id. (citing § 16-8.5-103(1)(a), (2)). If the court makes a preliminary finding and neither party timely objects to it, that preliminary finding becomes the final determination of competency or incompetency. Id. at ¶ 21 n.7, 459 P.3d at 535 n.7. However, if a party timely objects to the preliminary finding, the court must order a competency evaluation at CMHHIP. Id. at ¶ 21, 459 P.3d at 535 (citing § 16-8.5-103(2)). Lastly, if the court determines that it lacks sufficient information to make a preliminary finding, it must likewise order a competency evaluation at CMHHIP. Id. 
 ¶17 But we hastened to add in Lindsey that the statutory mandate directing trial courts to make a preliminary finding or determine that there is insufficient information to make such a finding "is not triggered unless the [party] raising the competency issue satisfies certain threshold requirements in section 16-8.5-102(2)(b)." Id. at ¶ 22, 459 P.3d at 535. Specifically, the party raising the 
 
12

 issue of competency must make a motion "in writing," certify there is "a good faith doubt that the defendant is competent to proceed," and "set forth the specific facts that have formed the basis for the motion." Id. (quoting § 16-8.5-102(2)(b)). Because the record in Lindsey supported the trial court's finding that the defense had failed to comply with the last of these threshold requirements, we concluded there was no abuse of discretion in denying the motion for a competency evaluation. Id. at ¶ 23, 459 P.3d at 535. 
 ¶18 Thus, Lindsey establishes both that a motion for a competency evaluation must fulfill certain threshold requirements and that a trial court has the discretion to reject "the rare" motion that fails to do so. Id. at ¶ 35, 459 P.3d at 538. It follows that a trial court is not required to order a competency evaluation whenever one is requested; if a request for a competency evaluation fails to satisfy the threshold requirements, the trial court has the discretion to deny it. Id. 
 ¶19 Consistent with Lindsey, the parties in this case agree that, assuming the defense's May 2025 motion for a competency evaluation failed to meet the threshold requirements, the court had the discretion to deny it.[5] But, following the order granting the May 2025 motion and McGee's completion of the June 2025 competency evaluation, could the court deny the defense's request for a second- 
 
13

 opinion evaluation? And, relatedly, could the court retroactively rule on June 30 and July 1 that the May 2025 motion was made for dilatory purposes and should not have been granted to begin with? To answer these questions, we must delve further into the competency statutory framework. 
 ¶20 A second-opinion evaluation is an evaluation "that is performed by a competency evaluator and that is not performed by or under the direction of, or paid for by, the department [of human services]." § 16-8.5-101(18), C.R.S. (2025). Either party may request a second-opinion evaluation, a hearing, or both within fourteen days after receipt of a court-ordered competency evaluation report from CMHHIP.[6] § 16-8.5-103(3). If neither party makes a timely request for a secondopinion evaluation or a hearing, then the court must determine, based on the information before it, whether the defendant is competent to proceed. § 16-8.5-103(5). In the event a party requests both a second-opinion evaluation and a hearing, the court must not set the hearing until it has received the report from the second-opinion evaluation. § 16-8.5-103(4). The court must provide the report from the second-opinion evaluation to the parties and CMHHIP, and if a hearing has been requested, it must do so prior to the hearing. § 16-8.5-103(4), (6). At any hearing held, the party asserting that the defendant is incompetent bears the 
 
14

 burden of submitting evidence and proving incompetency by a preponderance of the evidence. § 16-8.5-103(7). 
 ¶21 Of particular relevance here, not only may the defense timely request a second-opinion evaluation, it may ask to have an evaluator of its own choosing perform that evaluation. § 16-8.5-106(1), C.R.S. (2025). And if the defense asks for an evaluator of its own choosing, the court must "order that the competency evaluator chosen" by the defense "be given reasonable opportunity" to perform the second-opinion evaluation. Id. When a defendant who timely requests a second-opinion evaluation is indigent, the court must pay for the evaluation. § 16-8.5-107, C.R.S. (2025). 
 ¶22 The report from a second-opinion evaluation performed by an evaluator chosen by the defense must be provided to the court and the prosecution within a reasonable amount of time before any hearing. § 16-8.5-106(2). Upon receipt of that report, the court must forward it to the department of human services. Id. 
 ¶23 As this summary demonstrates, none of the provisions in the competency statutory framework vests discretion in trial courts to deny a party's timely request for a second-opinion evaluation once a court-ordered evaluation has been completed by CMHHIP. See generally People in Int. of W.P., 2013 CO 11, ¶ 31 n.10, 295 P.3d 514, 524 n.10 (observing in passing that the house bill that amended some of the statutory provisions pertinent here gave criminal defendants the right to a 
 
15

 second-opinion evaluation that's timely requested). Rather, once a court-ordered evaluation has been completed by CMHHIP, if a party timely requests a second-opinion evaluation, it is entitled to it. Further, if the defense wishes to have a second-opinion evaluation performed by an evaluator of its own choosing, the court must order that the chosen evaluator be given a reasonable opportunity to complete the evaluation. 
 ¶24 Here, the court erred in three ways. First, as the June 30 order reflects, the court required the defense to show that there was "new indic[i]a of incompetency" or "a different medical or psychological explanation regarding the defendant" to justify a second-opinion evaluation. As mentioned, our competency statutory framework entitles a party to a second-opinion evaluation upon request, so long as the request is timely. In this case, the defense's request for a second-opinion evaluation was timely. 
 ¶25 Second, the June 30 order demonstrates that the court viewed the second-opinion evaluation requested by the defense this past June as the "fifth competency evaluation." It is true that the defense was seeking the fifth competency evaluation in these proceedings. However, it is also true that the defense was timely requesting a second-opinion evaluation for the purpose of testing or challenging Dr. Velsor's conclusion of competency following the June 
 
16

 2025 court-ordered evaluation at CMHHIP. And, as we've explained, under our competency statutory framework, the defense was entitled to do so. 
 ¶26 And third, as the July 1 order indicates, the court believed that it could retroactively find that it shouldn't have ordered the June 2025 competency evaluation because the defense requested it for dilatory purposes. Although we appreciate the court's frustration with the number of competency evaluations that have been performed in this case, not to mention the lengthy delays those evaluations have caused, the court lacked the authority in July to retroactively nullify the May 2025 order. Once the evaluation ordered in May 2025 was completed, the court could not determine that the defense's motion for that evaluation should not have been granted and that the defense was therefore not entitled to a second-opinion evaluation. Whether correctly or incorrectly ordered, the completion of the June 2025 competency evaluation entitled the defense to a second-opinion evaluation. 
 ¶27 In sum, while we commend the court for its patience throughout this litigation, once the June 2025 competency evaluation was completed, the court had no choice but to grant the defense's timely motion for a second-opinion evaluation. Because it denied the motion instead, it erred. 
 
17

 IV. Conclusion 
 ¶28 For the foregoing reasons, we make absolute the order to show cause. On remand, the district court must grant the defense's June 2025 request for a second-opinion evaluation. 
 --------- 
 Notes: 
 [1] The issue raised by McGee in his C.A.R. 21 petition is as follows: 
 
 1. Whether the district court erred by denying Mr.
 McGee his statutory right to a second competency evaluation
 after defense counsel raised the issue of Mr. McGee's
 competency and the district court ordered an initial
 competency evaluation by a state doctor.
 
 [2] In a case like this one, "second evaluation" could be understood as referring to either the second court-ordered CMHHIP evaluation or the type of evaluation requested to test or challenge an initial court-ordered CMHHIP evaluation. Although our statutes refer to the latter as a "second evaluation," see § 16-8.5-103(3)-(6), C.R.S. (2025), to avoid confusion, we refer to the second court-ordered CMHHIP evaluation as the "second evaluation," and we refer to any evaluation ordered to test or challenge an earlier evaluation as a "second-opinion evaluation." 
 [3] A defendant who is incompetent may not be tried or sentenced. § 16-8.5-102(1). Moreover, while a defendant remains incompetent, the court may not entertain pretrial issues that are incapable of a fair determination without the defendant's full participation. Id. "Incompetent to proceed" means that, as a result of a mental disability or developmental disability, the defendant lacks (1) sufficient present ability to consult with counsel "with a reasonable degree of rational understanding in order to assist in the defense" or (2) "a rational and factual understanding of the criminal proceedings." § 16-8.5-101(12), C.R.S. (2025). 
 [4] If the court itself has reason to believe that the defendant is incompetent, it must suspend the proceedings and determine the issue of competency. § 16-8.5-102(2)(a). 
 [5] We need not, and thus do not, pass judgment on whether the defense's May 2025 motion for a competency evaluation met the threshold requirements. 
 [6] The court may decide on its own to order a second-opinion evaluation, but if it does so, it must pay for it. § 16-8.5-103(4). 
 ---------