The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Craig L. DAVIS, Defendant–Appellant.

No. 91CA0113.

Colorado Court of Appeals, Div. I.

Jan. 28, 1993.

Rehearing Denied March 8, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda C. Michow, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Craig L. Davis, appeals the judgment of conviction entered on a jury verdict finding him guilty of three counts of aggravated robbery and two counts of crime of violence. Defendant also appeals his sentence of 96 years. We affirm.

## I.

Defendant first contends the trial court erred in ruling that the victims' pretrial identifications of him from a surveillance photograph and photographic lineup were not unduly suggestive. We disagree.

■ The test applied to a pretrial identification procedure is whether, based upon the totality of the circumstances, there is a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Smith,* 620 P.2d 232 (Colo.1980).

■ Regarding the identification made by one victim, defendant contends that the detective's method of displaying first a surveillance photograph taken at the time of the robbery and then displaying the photographic lineup was unduly suggestive and, thus, tainted the entire identification process. However, in *People v. Loyd,* 751 P.2d 1015 (Colo.App.1988), we held that a photographic identification procedure, similar to the one used here, was not unduly suggestive.

■ Defendant also contests the trial court's finding that the identification by another victim was not unduly suggestive. A plain error standard of review applies because, at the suppression hearing, defense counsel stipulated to this witness' identification. Plain error exists only if the error so undermined the fundamental fairness of the trial as to cause serious doubt about the reliability of the defendant's conviction. *People v. Wood,* 743 P.2d 422 (Colo.1987).

This victim was shown the surveillance photograph and identified defendant. A few days later, she was shown the photographic lineup. She initially selected someone other than the defendant. The detective then suggested that she use a business card to cover the top of the head in each photo to gain a clearer perspective of each individual's appearance when wearing a hat. Upon doing this, the witness identified the defendant, stating that: "Picture No. 2 [of defendant] looked very close to what I remember the robber looked like."

We conclude that such a procedure was not so unduly suggestive as to violate defendant's due process rights. Having the witness cover the top half of each photograph in no way implicated the defendant, nor did it draw attention to his particular photograph.

Therefore, we conclude the trial court did not commit reversible error in rejecting defendant's challenge to these photographic identifications.

## II.

Defendant next asserts the trial court erred when it failed to rule on his request to represent himself after it had denied his appointed counsel's motion to withdraw. We disagree.

■ An individual charged with a criminal offense has the right to self-representation. But, when confronted with a request for self-representation, the trial court must

ascertain whether the accused has knowingly and intelligently decided to forego the benefits associated with the right to counsel. *People v. Lucero*, 200 Colo. 335, 615 P.2d 660 (1980). In making that determination, the trial court must take into account the circumstances surrounding the request, including the defendant's reason for the request. *People v. Barnes*, 636 P.2d 1323 (Colo.App.1981).

■ At a motion hearing, defendant's court-appointed counsel sought to withdraw, stating that private counsel was being sought, would enter an appearance in the near future, and that defendant did not want the court-appointed attorney representing him. Defendant told the court he did not want court-appointed counsel "on the case" and stated, "I'm not going to represent myself." The court advised defendant and counsel that, once private counsel had entered an appearance, it would allow court-appointed counsel to withdraw but not until that time.

At this point, defendant stated that he would like to represent himself. The trial court continued the matter to another date; in the interim, private counsel entered his appearance and court-appointed counsel withdrew. The issue of defendant's self-representation never arose again.

In light of these circumstances, we conclude that the trial court was not confronted with a request for self-representation. It is clear from the record that defendant had no intention of representing himself, but only wanted to facilitate the removal of court-appointed counsel. It is also apparent that defendant anticipated private counsel to make an appearance upon his behalf in the near future, and private counsel did so. Additionally, while appointed counsel's motion to withdraw mentions the anticipation of private counsel, it is devoid of any request or hint that defendant be allowed to go forward *pro se.*

Therefore, we conclude that the trial court here was not confronted with a request for self-representation and, hence, no error occurred in failure to enter a ruling.

## III.

■ Defendant next contends the trial court erred in refusing to order a sixth psychiatric examination to determine his competency to stand trial. We disagree.

Section 16–8–111, C.R.S. (1986 Repl.Vol. 8A) sets out the procedures that apply when the issue of a defendant's competency is raised. It provides:

Whenever the question of a defendant's incompetency to proceed is raised, the court shall make a preliminary finding either that the defendant is competent to proceed or that he is not. If the court feels that the information available to it is inadequate for making such finding, it may order a competency examination or such other investigation as it deems advisable.

One week before the fourth scheduled trial date, defense counsel again raised the issue of defendant's competency based upon a defense expert's examination of defendant and indication that the expert had questions about defendant's competency to proceed. However, after considering the expert's testimony, the reports of five psychiatrists who had determined defendant was competent (albeit malingering), and its own observations, the trial court concluded that it did not have "a good faith basis for believing that [defendant] was incompetent."

Section 16–8–111 grants the trial court discretion to order a competency examination in situations such as this. *See also People v. Mack*, 638 P.2d 257 (Colo.1981). Having reviewed the record, we conclude that the trial court had a more than sufficient basis for its determination and find no abuse of discretion.

## IV.

Defendant next argues that his rights to be present at his trial, to have effective assistance of counsel, and to confront the witnesses against him were violated when the trial court ordered him removed from the courtroom for the duration of the trial after he attacked a prosecution witness. We disagree.

■ The right to be present in the courtroom at every stage of trial is a fundamental constitutional right afforded a defendant under the Sixth Amendment. *Germany v. People*, 198 Colo. 337, 599 P.2d 904 (1979). However, a defendant may lose this right if, after he has been warned, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

### A.

Defendant first contends the trial court failed to warn him that his disruptive conduct would result in his removal. The record does not support this contention.

Before trial, during his competency hearing, the defendant spit in the prosecutor's face outside the court's presence. At that time, after being advised of defendant's actions, the court warned him that such conduct would not be tolerated.

During the trial, the defendant got up from his seat at the defense table and started to move towards the trial judge until a sheriff stopped him. The court again admonished the defendant not to stand up or take any steps during the time the jury was in the room. At that point, defense counsel also warned defendant that if anything similar occurred during the course of the trial, he could (1) be bound in the courtroom or (2) sent back to the jail to watch the trial on television.

Notwithstanding these warnings, the trial court found that the following events occurred at the conclusion of the testimony of defendant's ex-girlfriend:

[The defendant] dropped to the floor, crawled as quickly as he could underneath the defense table, was attacking [the witness] physically, had to be restrained by three sheriffs. He fought the three sheriffs most vociferously, yelled obscenities at [the witness] and referred to her, among other things, as a liar, and made several obscene references to her.... He continued to struggle with the sheriffs for at least five minutes and would not submit to their control and continued to yell obscenities, and it was necessary for a police detective and several additional sheriffs to assist before they could obtain control over Mr. Davis. (emphasis supplied)

We conclude that the defendant was more than adequately warned about the ramifications of aberrant behavior.

### B.

Defendant also contends the trial court failed to consider measures less drastic than removing him from the courtroom and having him watch the trial on closed-circuit television and communicate with his attorney via telephone. We disagree.

The record shows the court did consider less drastic alternatives but ultimately concluded that, to have the defendant "shackled, bound, and gagged" would more severely restrict his ability to communicate with his attorney than if he were allowed to watch the trial via closed-circuit television and freely talk to his attorney by telephone.

In *Illinois v. Allen, supra,* the Court set out three constitutionally permissible methods of dealing with a disruptive defendant: (1) binding and gagging him, thereby keeping him present; (2) citing him for contempt; and (3) taking him out of the courtroom until he promises to conduct himself properly. The *Allen* court weighed the advantages and disadvantages of each of its three suggested methods for dealing with disruptive defendants and concluded that the prejudice inherent in binding and gagging a defendant in front of the jury would indicate that either a finding of contempt or a removal from the courtroom would be the more appropriate methods to be used. However, as the *Allen* court recognized, a warning or finding of contempt would have little impact on a defendant who, as here, was already facing the possibility of a very long sentence.

Therefore, we conclude that the trial court used the least restrictive but most effective means of controlling the courtroom and the defendant's behavior by re-

moving him from the courtroom and allowing him to view the proceedings via closed-circuit television and to communicate with his attorney by telephone.

### C.

We also reject defendant's assertion that the trial court contributed to his aggressive behavior by restricting the dosage of his medication.

The record indicates that the alteration in the dosages of the defendant's medication would have had no effect on defendant's mental capability or behavior on the day in question. The jail nurse stated that, even if the defendant were not given his usual dosages in the future, the amount of medication in his blood level on the day in question would sustain him for at least 72 hours. Moreover, while the court restricted the future dosage of some of defendant's medication because it caused drowsiness, the court ordered the defendant to be continued on the drug which controlled his impulsive behavior.

We conclude that there is absolutely no evidence that altering the defendant's medication contributed to the outburst which resulted in his removal from the courtroom.

### V.

Defendant next contends the trial court committed reversible error in accepting the jury verdict while he was not physically present in the courtroom. We reject this contention.

As determined above, defendant was properly removed from the courtroom when he persisted in his disruptive behavior after several warnings. Crim.P. 43(b) provides:

> The trial court in its discretion may complete the trial, and the defendant shall be considered to have waived his right to be present, whenever a defendant, initially present: ...
>
> (2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, persists in conduct which is such as to justify his being excluded from the courtroom.

Applying Crim.P. 43, we conclude that defendant, by his conduct, waived any right to be present for the remainder of the trial, including the receipt of the jury verdict.

Given the fact that defendant had observed his entire trial by television and could talk to his attorney at any time by telephone, we conclude that the error, if any, in his physical absence during the rendering of the jury's verdict was harmless beyond a reasonable doubt. *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983).

### VI.

Last, defendant contends the trial court abused its discretion when it sentenced him to 96 years. It reached this total by imposing the maximum sentence of 32 years for each of three counts and ordering the sentences to run consecutively. We find no abuse of discretion.

Sentencing by its very nature is discretionary, and a trial court's sentencing decision will not be modified absent a clear abuse of that discretion. *People v. Watkins*, 684 P.2d 234 (Colo.1984).

In sentencing, the trial court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of the respect for the law, the deterrence of crime, and the protection of the public. If the sentence is within the legal range, is based upon appropriate considerations that are reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

Here, the trial court made the following findings:

> The court, after hearing the statements of counsel, statements of the victim, reading the presentence probation record, the psychiatric reports contained therein, the victim impact statement, all the matters which have been presented to this court, also listening to the testimony of [the judge who conducted the trial], finds that the defendant here is incorrigible. There is no possibility, in the court's mind, that defendant is sub-

ject to any type of rehabilitation; that society would best be served if the defendant was off the streets as long as this court—for as long a period of time that this court can impose a sentence.

It was well within the trial court's discretion to impose an aggravated sentence for each count. The crimes for which the defendant was convicted were of a serious nature. He had robbed several different victims, threatening each with a gun. Moreover, the psychological reports indicated that the defendant's propensity for violence was "very high." Additionally, the defendant has an extensive criminal record dating back to 1979, including convictions for burglary, drug possession, and assault with intent to commit rape. As well, he had violated terms of his parole. And, during the resolution of the issue of defendant's competency, a majority of the psychological reports stated that he was malingering and failed to take responsibility for his criminal episodes.

The court's conclusion that the defendant was incorrigible and beyond rehabilitation finds ample support in the record. Therefore, no abuse of discretion occurred.

The judgment of conviction and sentence are affirmed.

PIERCE and DAVIDSON, JJ., concur.