The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 1, 2022

## 2022COA98

**No. 19CA1354, *People v. Rodriguez* — Criminal Law — Mental Competency to Proceed — Judge's Discretion to Reject Inadequate Proffer — Good Faith Doubt Regarding Competency**

A division of the court of appeals considers whether a defendant who was twice previously found to be competent to proceed is entitled to a third competency determination based on the alleged deterioration of his mental condition. The division holds that, under sections 16-8.5-102 and 16-8.5-103, C.R.S. 2021, a trial court does not abuse its discretion by denying a defendant's subsequent motion to determine competency where (1) one or more specialists previously examined the defendant and concluded he was competent to proceed and (2) the subsequent motion presents neither different indicia of the defendant's lack of competency nor a different medical or psychological explanation for why the

defendant, despite having previously been found competent, is no longer competent to proceed.

Court of Appeals No. 19CA1354
City and County of Denver District Court No. 15CR5078
Honorable Shelley I. Gilman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew F. Rodriguez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Navarro and Graham*, JJ., concur

Announced September 1, 2022

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Mallika L. Magner, Alternate Defense Counsel, Crested Butte, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     Colorado statutes set forth the steps a court must take when the court, defense counsel, or a prosecutor questions whether a criminal defendant is mentally competent. But those statutes do not address how the court should proceed in a case where a lawyer asserts that the mental state of a defendant whom the court previously found to be competent has deteriorated to the point where the defendant may no longer be competent. This is such a case.

¶ 2     Matthew F. Rodriguez appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child (pattern of abuse), two counts of sexual assault on a child (position of trust), and aggravated incest. Rodriguez's principal argument challenges the district court's denial of defense counsel's third motion for a competency evaluation (the third motion) and the court's related decision not to grant the defense another continuance, after nearly three years of delays in the proceedings, to allow Rodriguez to undergo further competency testing.

¶ 3     We affirm.

## I.    Background Facts and Procedural History

¶ 4    Rodriguez engaged in sexual intercourse with his daughter G.L.  G.L. gave birth to Rodriguez's child shortly after she turned fourteen.  Based on this conduct, in September 2015, Rodriguez was charged with sexual assault on a child (pattern of abuse), two counts of sexual assault on a child (position of trust), and aggravated incest.

¶ 5    Defense counsel filed three motions to determine Rodriguez's competency — in January 2016, in March 2017, and on February 26, 2019.  The district court ordered competency evaluations for Rodriguez following the filing of the first two motions.  None of the professionals who evaluated Rodriguez concluded that he was not competent to proceed.

¶ 6    After Rodriguez's counsel filed the third motion, the court conducted a hearing at which it reviewed in detail the proceedings following the first and second motions and the results of Rodriguez's previous competency evaluations.  The court concluded that Rodriguez was competent to proceed, primarily because no professional had determined that he was not competent over three years of evaluations and neurological testing.

¶ 7    In addition, at the conclusion of the hearing on the third motion, defense counsel requested a "*Bergerud* hearing" to address an alleged "direct conflict" between Rodriguez and his counsel. *See People v. Bergerud*, 223 P.3d 686, 694-96 (Colo. 2010) (explaining the circumstances under which a defendant is entitled to the appointment of substitute counsel). Defense counsel asserted that, in light of the purported conflict, Rodriguez was entitled to new counsel.

¶ 8    The court set a *Bergerud* hearing before a different judge. Following that hearing, at which Rodriguez spoke to the court, the court denied defense counsel's request for appointment of substitute counsel.

¶ 9    The case proceeded to trial. A jury convicted Rodriguez of all the charged counts.

## II.    Analysis

¶ 10    Rodriguez contends that the district court reversibly erred by (1) denying the third motion, not granting him another continuance to allow for a further competency evaluation, and not suspending the proceedings sua sponte to declare a mistrial; and (2) denying his request for appointment of substitute counsel.

### A. Rodriguez's Request for a Third Competency Evaluation

¶ 11    We reject Rodriguez's assertion that the district court abused its discretion by denying the third motion, not granting a continuance for further evaluation, and not declaring a mistrial.

#### 1. Standard of Review

¶ 12    We review a district court's competency determination for an abuse of discretion. *People v. Mondragon*, 217 P.3d 936, 939 (Colo. App. 2009). A court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair, or it applies an incorrect legal standard. *Id.*

#### 2. Applicable Law

¶ 13    Under the United States and Colorado Constitutions, the right to due process bars the trial of an incompetent defendant. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *People v. Zapotocky*, 869 P.2d 1234, 1237 (Colo. 1994). In Colorado, a defendant's due process right not to be tried while incompetent is further protected by statute. *See* §§ 16-8.5-101 to -123, C.R.S. 2021.

¶ 14    Under the version of the competency statutes in effect when defense counsel filed the third motion on February 26, 2019, a defendant is "[i]ncompetent to proceed" if,

4

as a result of a mental disability or developmental disability, the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense, or . . . , as a result of a mental disability or developmental disability, the defendant does not have a rational and factual understanding of the criminal proceedings.

§ 16-8.5-101(11), C.R.S. 2018. (Where indicated, we cite to the version of the competency statutes in effect at the time defense counsel filed the third motion. The General Assembly subsequently amended the statutes. The portions of the statutes most critical to our analysis have not materially changed since 2018, however.) A "[m]ental disability" is a "substantial disorder of thought, mood, perception, or cognitive ability that results in marked functional disability, significantly interfering with adaptive behavior." § 16-8.5-101(12), C.R.S. 2018. Thus, a defendant is competent to proceed if he or she has "*both* a factual understanding and cognitive ability *and* perceptions and understandings that are rational and grounded in reality." *Mondragon*, 217 P.3d at 941.

¶ 15   "A defendant is presumed to be competent to stand trial." *People v. Stephenson*, 165 P.3d 860, 866 (Colo. App. 2007). The

5

party asserting that the defendant lacks the mental competency to proceed bears the burden to prove incompetency by a preponderance of the evidence. § 16-8.5-103(7), C.R.S. 2018.

¶ 16 The Colorado statutes provide two ways to challenge a criminal defendant's competency to proceed. First, if "either the defense or the prosecution has reason to believe that the defendant is incompetent to proceed, either party may file a motion in advance of the commencement of the particular proceeding." § 16-8.5-102(2)(b), C.R.S. 2018. Second, if the court "has reason to believe that the defendant is incompetent to proceed, it is the [court]'s duty to suspend the proceeding and determine the competency or incompetency of the defendant." § 16-8.5-102(2)(a), C.R.S. 2018. The procedures a court must follow to determine a defendant's competency to proceed are outlined in section 16-8.5-103, C.R.S. 2018.

¶ 17 Under section 16-8.5-103(1), C.R.S. 2018, if a defendant's competency is called into question, "the court may make a preliminary finding of competency or incompetency, which shall be a final determination unless a party to the case objects within fourteen days after the court's preliminary finding." If a party

objects to the court's preliminary finding, or if the court determines it has insufficient information to make a preliminary finding, the court "shall order that the defendant be evaluated for competency" by the department of human services and that the department "prepare a court-ordered report." § 16-8.5-103(2), C.R.S. 2018.

¶ 18    "Within fourteen days after receipt of the court-ordered report, either party may request a hearing or a second evaluation." § 16-8.5-103(3), C.R.S. 2018.  "If a party requests a second evaluation, any pending requests for a hearing shall be continued until the receipt of the second evaluation report." § 16-8.5-103(4), C.R.S. 2018.  However, "[i]f neither party requests a hearing or a second evaluation within the applicable time frame, the court shall enter a final determination, based on the information then available to the court, whether the defendant is or is not competent to proceed." § 16-8.5-103(5), C.R.S. 2018.

### 3.    The Court Did Not Abuse Its Discretion by Denying the Third Motion

¶ 19    We disagree with Rodriguez's contention that the district court erred by denying the third motion and not suspending the court proceedings further to allow for another competency evaluation.

7

¶ 20    As explained below, after a court makes a final determination of competency, as the district court had already done twice here before defense counsel filed the third motion, the court need not order an additional competency evaluation where the new motion raises the same issues as did the previous competency motions. Under these circumstances, sections 16-8.5-102 and 16-8.5-103 do not require the district court to address the defendant's competency again.

### a.    The Three Competency Motions

¶ 21    We begin our review of the court's ruling on the third motion by examining the allegations in the first and second competency motions and the results of Rodriguez's evaluations in 2016 and 2017.

¶ 22    Defense counsel filed the first motion to determine Rodriguez's competency (the first motion) in January 2016. In the first motion, defense counsel said that Rodriguez was unable to discuss the facts of his case in a meaningful capacity because he had difficulty focusing on the issues and was easily distracted.

¶ 23    The district court granted the first motion and ordered a competency evaluation (the 2016 evaluation) pursuant to section 16-8.5-103(2), C.R.S. 2018.

¶ 24    The psychologist who conducted the 2016 evaluation (the first psychologist) reported that Rodriguez mentioned a head injury from a car accident nearly three years earlier.  However, the first psychologist noted that Rodriguez's hospital records did not indicate he had experienced a traumatic brain injury, an altered mental status, or cognitive dysfunction before, during, or after the car accident.  Moreover, Rodriguez was "not taking medications, was not engaged in mental health treatment, presented with adequately intact memory and comprehension, and appeared to be of approximately average to low average verbal intelligence."

¶ 25    Notably, the first psychologist reported that Rodriguez

>        understood the nature of the charges against
>        him, potential outcomes and consequences if
>        found guilty of his charges, the adversarial
>        nature of court proceedings and personnel
>        roles, how to assist his attorney, his right
>        against self-incrimination, and the reasoning
>        underlying important decisions in his case.  He
>        demonstrated the ability to behave
>        appropriately in the courtroom and to express
>        his desired approach to his case. . . .  He
>        . . . demonstrated the ability to provide

9

> pertinent detailed information regarding his version of the alleged offenses [to his attorney] and appeared willing to work with [her] and to consider her advice.

The first psychologist opined that Rodriguez was competent to proceed.

¶ 26 At a hearing on the first motion, the district court said it would accept the first psychologist's findings and make a final determination that Rodriguez was competent to proceed unless the defense requested a second evaluation within fourteen days. Defense counsel did not request a second evaluation within that time.

¶ 27 Based on the findings detailed in the first psychologist's report and the fact that defense counsel did not request a second evaluation within the fourteen-day time period specified in section 16-8.5-103(3), C.R.S. 2018, the district court entered a final determination that Rodriguez was competent to proceed pursuant to section 16-8.5-103(5), C.R.S. 2018.

¶ 28 In March 2017, a new public defender entered her appearance as counsel for Rodriguez and filed a second motion to determine Rodriguez's competency (the second motion). In the second motion,

10

defense counsel alleged that Rodriguez had "significant defects in memory and comprehension and could not recall basic information about attorney/client conversations for time periods as short as one day." Counsel also asserted that Rodriguez was unable to demonstrate a rational ability to evaluate the information she explained to him and was unable to make decisions that were factually and rationally based.

¶ 29    The district court granted the second motion and ordered another competency evaluation (the first 2017 evaluation). A different psychologist (the second psychologist) conducted the first 2017 evaluation.

¶ 30    The second psychologist said that Rodriguez's medical records showed no neurological deficits following the car accident and that Rodriguez's "head was atraumatic" with "no abnormal test results" and "no impairments." She said that Rodriguez's "abstract reasoning abilities were fair to poor . . . but his judgment for common dilemmas was good." He "performed well on simple tasks designed to measure his attention and concentration and he maintained an adequate amount of both throughout the interview." The second psychologist noted that,

11

> [a]lthough [Rodriguez] reported concerns with his memory functioning and sometimes indicated that he could not recall information, there was no evidence of significant memory impairment during the interview; he was able to recall historical information about his life as well as newly learned information during the interview when he chose to do so.

¶ 31 Additionally, the second psychologist reported that she had administered a test to assess "response styles and feigned deficits" in legal knowledge. She opined that Rodriguez's score on the test suggested he was feigning deficits in his legal knowledge. The second psychologist further found that Rodriguez was "psychiatrically stable" and "did not present with cognitive deficits" that would preclude him from having a "rational and factual understanding of the proceedings against him as well as the ability to consult with his attorney to assist in his defense." Like the first psychologist, the second psychologist opined that Rodriguez was competent to proceed.

¶ 32 Following the completion of the first 2017 evaluation, defense counsel requested a second evaluation (the second 2017 evaluation), which the district court ordered. A third psychologist (the third psychologist) conducted the second 2017 evaluation.

12

¶ 33    The third psychologist said that Rodriguez "performed below

average on questions assessing verbal aspects of intelligence."

However, the third psychologist observed that Rodriguez

> was alert and attentive throughout the
> [evaluation], and his overall level of attention
> and concentration was sufficient for interview
> purposes.  He knew who he was, where he
> was, [and] the approximate time of day, date,
> day of the week, and season.
>
> Long-term memory appeared to be intact, and
> he described his past history in adequate
> detail.  He repeated three words immediately,
> and he recalled one of them after
> approximately 5 minutes.

¶ 34    The third psychologist also compared the results of the tests

he had administered to the results of the tests conducted by the

first and second psychologists.  The third psychologist explained

that

> [a]lthough there was no indication that Mr.
> Rodriguez feigned memory deficits, tests
> administered both by [the second psychologist]
> and myself suggested the probability of
> feigning competency abilities and of
> insufficient motivation and effort when taking
> performance tests.  These test results call into
> question the validity of the neuropsychological
> and intelligence test results, as well as his
> poor performance on my assessment of his
> competency abilities. . . .  Finally, and
> importantly, although Mr. Rodriguez may have

13

difficulty comprehending complex material, deficits in adaptive functioning were not reported or observed in any of the evaluations.

¶ 35    Based on these observations, the third psychologist, like the first and second psychologists, opined that Rodriguez was competent to proceed.

¶ 36    Following the first and second 2017 evaluations, defense counsel scheduled neurological testing for Rodriguez and requested that the district court conduct a competency hearing after Rodriguez completed the testing.  Although section 16-8.5-103, C.R.S. 2018, did not require the court to continue the competency hearing to allow for neurological testing following a second competency evaluation, the court nonetheless granted the defense's request for a continuance to complete the testing.

¶ 37    Over the next approximately eleven months, the district court granted defense counsel's requests for three additional continuances to allow two doctors to complete the neurological tests.  Although the first doctor concluded that Rodriguez was competent to proceed, the second doctor said that Rodriguez had "some sort of traumatic brain injury, and it affects him."  But because Rodriguez also had severe anxiety that he was not treating

14

with medication, the second doctor reported that she could not tell "the extent that [the anxiety] affects him or whether it affects him[,] but the results . . . are a result of malingering."  She could not determine whether "this is an effect regarding incompetency or . . . it's malingering until he is medicated on anxiety medication."

¶ 38    Defense counsel requested a continuance of the competency hearing so she could either get Rodriguez to take his anti-anxiety medication or, if he refused, have the second doctor retest him to assess whether a traumatic brain injury affected his competency.

¶ 39    At that point, Rodriguez's competency proceedings had already delayed the case for approximately three years, and the victim was expressing frustration that the case had not yet gone to trial.  In part due to the length of the delays, the district court denied counsel's new request for a continuance of the competency hearing and set the hearing for August 2018.

¶ 40    At that competency hearing, defense counsel told the court that she did not believe she had "sufficient legal grounds" to "challenge the findings previously made by the doctors" and therefore would not "go forward" with the second motion.  Because Rodriguez had not met his burden to prove that he was

incompetent, *see* § 16-8.5-103(7), C.R.S. 2018, the district court made a final determination that Rodriguez was competent to proceed.

¶ 41    Defense counsel filed the third motion on February 26, 2019 — approximately three years after defense counsel had filed the first motion.  In the third motion, defense counsel alleged that Rodriguez's competency had significantly deteriorated since he had been taken into custody on new charges not involving G.L.  Defense counsel asserted that Rodriguez was unable to retain the information his lawyers provided to him and that his ability to understand any aspect of his case had diminished to the point of nonexistence.  Defense counsel specifically said that she had noticed "additional and significant deterioration in Rodriguez's ability to communicate, understand and assist in his case."

¶ 42    At a hearing conducted on February 28, 2019, the district court noted that defense counsel had not presented any information regarding Rodriguez's competency that materially differed from the allegations contained in the first and second motions.  The court described in detail the proceedings involving the first and second

16

motions and the results of the 2016 evaluation and the first 2017 evaluation.

¶ 43    The district court determined for a third time that Rodriguez was competent to proceed, explaining that

> [Rodriguez's] competency to proceed has been examined for almost three years now, and no doctor has found [him] incompetent[.] [Moreover,] . . . the neurological testing has not been presented that indicates there's any concern, so the Court would find that it has sufficient information to find that Mr. Rodriguez is competent to proceed.

The court thus acknowledged that the representations in the third motion did not allege a sufficient material change in Rodriguez's mental condition to warrant another competency evaluation.

¶ 44    In discussing the third motion again during Rodriguez's trial a few days later, the district court noted that it had already authorized competency evaluations of Rodriguez and that, even though "all of those competency evaluations found [he] was competent to proceed," the court had nonetheless granted him an additional year "to conduct neuro and neurocognitive testing." The court observed that, following the additional testing, defense counsel advised the court "there was not a good faith basis to

17

challenge [Rodriguez's] competency." The court then denied defense counsel's request for an additional competency evaluation.

¶ 45     A comparison of the factual allegations in the three motions underscores why the court did not abuse its discretion by denying the third motion:

| | Issue | The first motion | The second motion | The third motion |
|---|---|---|---|---|
| **Defense Counsel's Assertions** | Rodriguez's inability to focus and to retain information. | Rodriguez gets easily distracted and has difficulty focusing on the issues and conversations at hand.<br><br>Rodriguez is unable to focus on one thought long enough to meaningfully discuss the facts and circumstances of the case without confusing facts and incidents. | Rodriguez cannot recall basic information about attorney/client conversations for time periods as short as one day.<br><br>Rodriguez is unable to demonstrate a rational ability to evaluate the information provided by counsel. He exhibits significant defects in memory and comprehension. | Rodriguez is unable to retain information from one meeting to the next. |

18

| | Issue | The first motion | The second motion | The third motion |
|---|---|---|---|---|
| | Rodriguez's cognitive abilities. | | Rodriguez may be low functioning or may have experienced a traumatic brain injury that affects his ability to consult with and assist counsel. Rodriguez is unable to make decisions that are factually and rationally based. | Rodriguez has insufficient cognitive facilities to be able to proceed to trial. |
| | Rodriguez's understanding of the proceedings. | It is unclear whether Rodriguez has a complete understanding of the court proceedings and possible penalties. | | Rodriguez's ability to understand any aspect of his case has diminished to the point that it is nonexistent. |
| | Rodriguez's ability to communicate with his counsel. | Rodriguez is unable to discuss the facts of his case in a meaningful capacity. | | Rodriguez's anxiety is debilitating, and he has become more emotional, resulting in significant deterioration in his ability to communicate, understand, and assist in his defense. |

¶ 46    As the chart indicates, counsel's assertions in the third motion were not materially different from the assertions of mental incompetence in the first and second motions. The third motion did

19

not suggest any cause for the change in Rodriguez's competency, aside from his incarceration, and did not point to any indicia of his incompetence that differed from those reported in the first and second motions. Like the first and second motions, the third motion referred to the car accident and noted Rodriguez's difficulties in understanding "the nature of the charges, the workings of the criminal system and the possible penalties." Further, in the third motion, defense counsel acknowledged that none of the prior competency evaluations had resulted in a determination that Rodriguez was incompetent to proceed. And nothing in the third motion suggested that a specialist who conducted a third competency evaluation would arrive at a different conclusion from that reached by the specialists who had previously examined and tested Rodriguez.

¶ 47   In sum, defense counsel alleged both before and after Rodriguez's first two competency evaluations that Rodriguez lacked the ability to retain the information he received from defense counsel, had "low functioning" cognitive abilities, lacked a "rational and factual understanding of the criminal proceedings," and did not have a "sufficient present ability to consult with his lawyer with a

20

reasonable degree of rational understanding in order to assist in the defense."

b. The Case Law Governing Competency Motions that Lack Sufficient Facts to Support a Good Faith Doubt Regarding the Defendant's Competency

¶ 48 The supreme court's reasoning in *People v. Lindsey*, 2020 CO 21, 459 P.3d 530 (*Lindsey II*), guides our analysis. Less than one month before trial, Lindsey's lawyer sought leave to withdraw, *id.* at ¶ 6, 459 P.3d at 532, in part because "Lindsey had failed to be completely forthright with him, to keep promises to furnish information and funds for an effective defense, and to diligently work and communicate with him," *id.* at ¶ 7, 459 P.3d at 532. The court denied the motion to withdraw. *Id.*

¶ 49 Ten days later, defense counsel filed a motion seeking a determination regarding Lindsey's competency. *Id.* at ¶ 8, 459 P.3d at 532. The specific facts alleged in the competency motion "mirrored the factual allegations advanced in support of his motion to withdraw: Lindsey had not been completely forthright with him, had not kept promises to furnish information and funds for an effective defense, and had failed to diligently work and communicate with him." *Id.*

21

¶ 50    Following a hearing, the court found that Lindsey was competent to proceed, *id.* at ¶ 13, 459 P.3d at 534, in part because the issues detailed in the competency motion "were related to Lindsey's lack of cooperation in this litigation and had nothing to do with competency," *id.* at ¶ 15, 459 P.3d at 534; *see People v. Lindsey*, 2018 COA 96M, ¶ 12, 461 P.3d 553, 556 (*Lindsey I*), *rev'd*, 2020 CO 21, 459 P.3d 530.  The court then said that it would not allow defense counsel to file an objection to its ruling.  It admonished defense counsel, "you presumed by simply following the procedures in this statute, that you, in your mind, have questioned the present ability of your client to proceed here today, is wrong.  So the motion is being dismissed." *Lindsey I*, ¶ 13, 461 P.3d at 556.  Lindsey was convicted as charged and filed an appeal. *Lindsey II*, ¶¶ 16-17, 459 P.3d at 534.

¶ 51    On appeal, Lindsey argued that the court erred by "refusing to follow the statutory procedures for determining competency set forth in sections 16-8.5-102 and -103." *Id.* at ¶ 17, 459 P.3d at 534.  He specifically contended that, once his lawyer filed the competency motion, the court had only two choices: "(1) make a preliminary finding of competency or incompetency, which, if timely

22

objected to by either attorney, would require a competency evaluation; or (2) indicate that there was insufficient information to make a preliminary finding, which would require a competency evaluation." *Id.*

¶ 52 In determining that the court had not erred by denying the competency motion without following the procedures set forth in sections 16-8.5-102 and 16-8.5-103, the supreme court noted, among other points, that "the specific facts in the competency motion were the same specific facts advanced by [defense counsel] to show that he had a conflict with Lindsey that warranted withdrawal as counsel of record." *Id.* at ¶ 26, 459 P.3d at 536. For that reason, the supreme court concluded that "the trial court did not abuse its discretion in rejecting the motion as inadequate" because it contained an "inadequate proffer": Under the totality of the circumstances present in the case, the motion "was bereft of specific facts supporting a good-faith doubt regarding Lindsey's competency." *Id.* at ¶ 35, 459 P.3d at 538.

¶ 53 Thus, *Lindsey II* stands for the proposition that a district court's finding of competency in response to a motion that fails to "raise a good-faith doubt regarding competency," *id.* at ¶ 13, 459

23

P.3d at 534, does not trigger the procedures set forth in sections

16-8.5-102 and 16-8.5-103:

> The statutory mandate that instructs trial courts to make a preliminary finding or determine that there is insufficient information to make such a finding is not triggered unless the attorney raising the competency issue satisfies certain threshold requirements in section 16-8.5-102(2)(b). Specifically, counsel must make his motion "in writing," certify he has "a good faith doubt that the defendant is competent to proceed," and "set forth the specific facts that have formed the basis for the motion." § 16-8.5-102(2)(b). We conclude that an attorney cannot adequately raise the question of competency without complying with these threshold requirements.

*Lindsey II*, ¶ 22, 459 P.3d at 535; *see People v. Zimmer*, 2021 COA

40, ¶ 20, 491 P.3d 554, 558 ("[T]he facts set forth in the

[competency] motion must *actually* support a good faith doubt

about the defendant's competency. If the asserted facts do not, the

trial court has discretion to reject the motion without making a

preliminary finding, thereby not triggering any of the statutory

procedures.") (citation omitted).

¶ 54    A division of this court considered similar facts to those

presented here when analyzing an earlier version of the competency

statutes. In *People v. Davis*, 851 P.2d 239, 242 (Colo. App. 1993),

defense counsel raised the issue of the defendant's competency one week before the fourth scheduled trial date, after five psychiatrists had examined the defendant and determined he was "competent (albeit malingering)." Under these circumstances, the division held that the trial court had not abused its discretion by concluding that the defense had not presented "a good faith basis for believing" that the defendant was incompetent. *Id.*; *see People v. Morino*, 743 P.2d 49, 51 (Colo. App. 1987) (A court is not required to accept without questioning defense counsel's assertions regarding the defendant's competence; "[i]t is only when those representations, either alone or in conjunction with other evidence, raise a substantial issue of a defendant's competence that a court violates due process if it proceeds without determining the issue.").

¶ 55    Following the analyses in *Lindsey II*, *Zimmer*, and *Davis*, we hold that a successive competency motion that does not raise new indicia of incompetency regarding a defendant who was previously examined and determined to be competent does not "support a good faith doubt about the defendant's competency." *Zimmer,* ¶ 20, 491 P.3d at 558. Therefore, the third motion did not trigger the

procedures set forth in sections 16-8.5-102 and 16-8.5-103. *See*

*Lindsey II*, ¶ 35, 459 P.3d at 538.

¶ 56    In this case, unlike in *Lindsey II*, the district court did not

expressly say it was dismissing the motion and would not allow

defense counsel to file an objection to its finding of competency.

But the court's ruling from the bench made clear that it had no

intention of ordering another competency evaluation for Rodriguez,

stating "it has sufficient information to find that Mr. Rodriguez is

competent to proceed" based on the evaluations conducted over the

preceding three years.

¶ 57    The reasoning of *Lindsey II* is essential to avoid unnecessary

delays in criminal proceedings. As the supreme court observed,

requiring district courts to follow the procedures in sections

16-8.5-102 and 16-8.5-103 every time a lawyer files a competency

motion, even one that fails to raise a good faith doubt regarding the

defendant's competency, "would risk adverse consequences to the

efficiency of our criminal justice system, as it would jeopardize our

trial courts' ability to manage their dockets and control the

proceedings over which they preside." *Lindsey II*, ¶ 31, 459 P.3d at

537. Stripping district courts of their discretion to decline to order

a competency evaluation where no such evaluation is warranted would allow lawyers to delay trials for years, if not decades, by filing competency motion after competency motion. No reasonable reading of sections 16-8.5-102 and 16-8.5-103 would allow criminal cases to become trapped in such a time loop.

¶ 58 Consistent with *Lindsey II*'s admonition that "a trial court should only order competency evaluations when they are warranted," *id.* at ¶ 36, 459 P.3d at 538, we hold that a court does not abuse its discretion by denying a defendant's subsequent motion for a determination of competency where (1) one or more specialists previously examined the defendant and concluded he or she was competent to proceed and (2) the subsequent motion presents neither previously unexamined indicia of the defendant's lack of competency nor a different medical or psychological explanation for why the defendant, despite having previously been found competent, is no longer competent to proceed. Significantly, here, in denying the third motion, the district court considered the number of specialists who had evaluated Rodriguez and determined that he was competent. Except for the doctor who could not determine whether Rodriguez was or was not competent to proceed,

27

every specialist who examined him concluded that he was competent despite his low intelligence and anxiety. While Rodriguez is unquestionably a low functioning individual, nothing in the record shows that the court abused its discretion by relying on the medical and psychological specialists who found that Rodriguez's level of functioning did not dip below the level of competency.

¶ 59 Accordingly, we conclude that the district court did not abuse its discretion by denying defense counsel's third motion and not suspending the court proceedings until a new competency evaluation could be conducted. (Rodriguez's argument that the court erred by not sua sponte suspending the trial and declaring a mistrial is undeveloped. Specifically, he does not explain why the court should have declared a mistrial after it had already denied the third motion and found Rodriguez competent to proceed. For this reason, we do not address the merits of Rodriguez's argument concerning the court's alleged failure to act sua sponte. *See People v. Liggett*, 2021 COA 51, ¶ 53, 492 P.3d 356, 365.) Thus, we affirm the district court's denial of the third motion.

B.     The Motion for Appointment of Substitute Counsel

¶ 60     We also disagree with Rodriguez's assertion that the district

court violated his right to counsel by denying his request for

appointment of substitute counsel on the grounds of an alleged

complete breakdown in communication between him and defense

counsel.

1.     Standard of Review and Applicable Law

¶ 61     We review a district court's denial of a defendant's request for

substitution of counsel for an abuse of discretion.  *People v. Garcia*,

64 P.3d 857, 863 (Colo. App. 2002).

¶ 62     The right to counsel is a fundamental right guaranteed by the

Sixth Amendment to the United States Constitution and is

considered essential to a fair trial.  *People v. Arguello*, 772 P.2d 87,

92 (Colo. 1989).  The Sixth Amendment guarantees competent

representation.  *Id.*  A court is not required to appoint substitute

counsel "unless it verifies that the defendant has a well-founded

reason for believing that the appointed attorney cannot or will not

competently represent him."  *People v. Johnson*, 2016 COA 15, ¶ 30,

381 P.3d 348, 355.

¶ 63    "If the defendant establishes good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that may lead to an apparently unjust verdict, the court must appoint substitute counsel." *People v. Kelling*, 151 P.3d 650, 653 (Colo. App. 2006). "The type of 'total breakdown' in communication which would warrant substitution of counsel must be evidenced by proof 'of a severe and pervasive conflict with [the defendant's] attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.'" *People v. Faussett*, 2016 COA 94M, ¶ 24, 409 P.3d 477, 483 (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)).

## 2.    Additional Facts

¶ 64    At the conclusion of the February 28, 2019, hearing, defense counsel requested a *Bergerud* hearing to address an alleged conflict between Rodriguez and his counsel relating to "the defense of [Rodriguez's] case and how [Rodriguez] wishes to present the defense." The district court set a *Bergerud* hearing later that day before a different judge.

¶ 65     At the *Bergerud* hearing, counsel said that she had represented Rodriguez for about two and a half years.  During that time, she "tried meeting with him one-on-one, . . . with him with his mother present, . . . [and] with him with his mother and sister present."  She explained that, during those meetings, she did not believe that Rodriguez understood the information that she was attempting to communicate to him.

¶ 66     Counsel also told the court that she had arranged for a different public defender to meet with Rodriguez to determine whether her difficulty in communicating with Rodriguez arose from a "language issue, a sex issue, or a race issue."  In the week before the hearing, the other public defender met with Rodriguez for more than seven hours and similarly concluded that Rodriguez was unable to understand him.

¶ 67     The court then questioned Rodriguez.  Although he had difficulty answering some of the court's questions and began crying on the witness stand, Rodriguez said it was hard for him to remember things and that he liked his lawyers.

¶ 68     At the conclusion of the *Bergerud* hearing, the court found there had not been a complete breakdown in communication

31

between defense counsel and Rodriguez. The court said, "What I do see is . . . lawyers who are really working hard to try and do the best that they can for Mr. Rodriguez, and I don't think Mr. Rodriguez thinks differently . . . and in fact, he says he trusts you." The court denied defense counsel's request to appoint substitute counsel for Rodriguez.

### 3. The Court Did Not Err by Denying Rodriguez's Request to Appoint Substitute Counsel

¶ 69     We conclude that, for two reasons, the district court's denial did not constitute error.

¶ 70     First, based on the court's colloquy with Rodriguez at the *Bergerud* hearing and the length of defense counsel's relationship with him, we conclude that the district court did not abuse its discretion by determining that the relationship between counsel and Rodriguez had not deteriorated to the point where counsel could not provide effective assistance. *See People v. Jenkins*, 83 P.3d 1122, 1127 (Colo. App. 2003).

¶ 71     Although the record demonstrates that Rodriguez and defense counsel experienced difficulty communicating with one another, the court did not abuse its discretion by concluding that such difficulty

did not constitute an irretrievable breakdown in communications. *See People v. Thornton*, 251 P.3d 1147, 1151 (Colo. App. 2010) (holding that communication difficulties do not demonstrate a complete breakdown of communication, particularly when counsel has assured the court that he has been in contact with the defendant and continued to represent the defendant's interests); *see also Jenkins*, 83 P.3d at 1126 (finding that a complete breakdown of communication was not established even though defense counsel only met with the defendant once in nine months, had not discussed potential witnesses with him, and had not given him copies of discovery materials).

¶ 72    Second, the record demonstrates that any lawyer would have experienced the same challenges in communicating with Rodriguez. After defense counsel discussed her difficulties in communicating with Rodriguez, the court said, "[B]ased on what you just told me[,] that would be true whoever represented him." The record establishes that appointing new counsel for Rodriguez would have been a futile exercise; new counsel would have experienced no greater ability to explain the case and the proceedings to Rodriguez than did his counsel at the time of the trial. Rodriguez's difficulties

in understanding what his lawyers were trying to tell him could have delayed his trial indefinitely, as new lawyer after new lawyer attempted without success to communicate with him, resulting in yet another judicial time loop. Rodriguez's communication difficulties were not attributable to his inability to understand any particular lawyer, but, rather, to his low intelligence and high level of anxiety.

¶ 73     We also note that, at the *Bergerud* hearing, defense counsel advised the court that other judges had previously deemed Rodriguez competent to proceed despite the "severe limitations to his processing and communicating ability." Defense counsel explained that "[d]octors have found that he has a very low IQ and . . . a severe anxiety disorder" that make it "very difficult for him to answer questions and to articulate what he's thinking." The court acknowledged this point and noted that "[t]his is sounding more like a competency hearing and less like a *Bergerud* hearing." The record confirms the accuracy of this observation; the motion for leave to withdraw and the three competency motions all arose from the mental and emotional challenges that Rodriguez consistently

manifested throughout this case. They made him a difficult client but not an incompetent one.

¶ 74 After carefully reviewing the extensive record in this case, we cannot say that the district court's denial of the motion for appointment of substitute counsel was "manifestly arbitrary, unreasonable, or unfair," or that the court applied "an incorrect legal standard." *Mondragon*, 217 P.3d at 939; *see People v. Rubanowitz*, 688 P.2d 231, 242-43 (Colo. 1984) (holding that, in determining whether to appoint substitute counsel, a court may consider "the possibility that any new counsel would be faced with similar difficulties" to those that current defense counsel is experiencing). Thus, we conclude that the district court did not abuse its discretion by declining to appoint substitute counsel for Rodriguez.

## III.   Conclusion

¶ 75 The judgment of conviction is affirmed.

JUDGE NAVARRO and JUDGE GRAHAM concur.